**Frank M. BOLIEU, Appellant,**

v.

**FIREMEN'S AND POLICEMEN'S CIVIL SERVICE COMMISSION OF CITY OF SAN ANTONIO et al., Appellees.**

No. 13545.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 25, 1959.

Rehearing Denied Dec. 23, 1959.

James L. M. Miller, San Antonio, for appellant.

Carlos C. Cadena, City Atty., Fred M. Sullivan, Asst. City Atty., San Antonio, for appellees.

POPE, Justice.

Frank M. Bolieu has appealed from a judgment which upheld an order of the San Antonio Firemen's and Policemen's Civil Service Commission dismissing him from the Fire Department. Bolieu contends that (1) the charges against him that he was guilty of conduct prejudicial to good order and that he neglected his duty, do not embrace and are not proved by evidence of intoxication while on duty, (2) the Fire Chief in discharging him looked to his past record, and that this violated Section 16, Article 1269m, Vernon's Ann.Civ.Stats., which limits complaints to acts which happened within six months preceding the suspension order, and (3) the finding of intoxication is not supported by substantial evidence.

Bolieu contends that he was originally charged with conduct prejudicial to good order and neglect of duty, but that he was tried for being intoxicated while on duty. He reasons that this was an amendment of the charges in violation of Section 16, Article 1269m. He also argues that there is no offense under Section 5, Art. 1269m for intoxication while on duty. We find no merit in these points. Section 5, among other offenses, states that firemen may be charged with both neglect of duty, and of conduct prejudicial to good order. Rule XX, Section 120, of the Personnel Rules of the City, states that a fireman may be charged with conduct prejudicial to good order and also neglect of duty. The statement of reasons for suspension stated that Bolieu had violated Rule XX, in that he was guilty of conduct prejudicial to good order and neglect of duty. It then went further and specified that "on March 12, 1959, Fireman Frank M. Bolieu, while on duty as a Fireman for the San Antonio Fire Department at Fire Station No. 20, which is located at 2903 South New Braunfels Avenue, San Antonio, Texas, was intoxicated, which act or condition is * * * conduct prejudicial to good order of the San Antonio Fire Department."

**236**

■■ It is seen, therefore, that the Chief first stated the general charge and then specified the act which supports that charge. While this is a civil proceeding, Simpson v. City of Houston, Tex.Civ.App., 260 S.W.2d 94, 97, we need not look far to discover that the general charge of conduct prejudicial to good order is an old one and is borrowed from the customs and laws of the military establishments. 10 U.S.C.A. § 934; Art. 134, Uniform Code of Military Justice. The general charge is confined to cases in which the prejudice is reasonably direct and palpable. Manual for Courts-Martial United States, § 213 (1951). As illustrative of such offenses, the Manual mentions the offense of rendering oneself unfit for duty by excessive use of intoxicants and drunkenness. See, 4 McQuillin, Municipal Corporations, § 12.239. The general charge has been brought in Texas for a variety of specific offenses not otherwise covered by the statute or rules. In Firemen's and Policemen's Civil Service Commission of City of San Antonio v. Shaw, Tex.Civ.App., 306 S.W.2d 160, the officer was charged with ordering subordinates to cease and desist from enforcing laws against gaming machines. In Firemen's and Policemen's Civil Service Commission of Houston v. Tinsley, Tex.Civ.App., 304 S. W.2d 435, immorality was the specific offense. In Reagan v. Bichsel, Tex.Civ.App., 284 S.W.2d 935, the officer was charged with fomenting racial strife.

We do not hold that such civil service hearings are subject to the stringency of the criminal law, but only that Section 5 of Article 1269m recognizes that the general charge supported by specific acts is a suitable procedure for a profession which demands a state of readiness, strict discipline, and a measure of obedience and valor not expected in ordinary callings. 62 C.J. S. Municipal Corporations § 606a.

■ Bolieu also complains that the Fire Chief discharged him on the basis of offenses which occurred more than six months before the suspension. Sec. 16, Article 1269m. The offenses occurred on March 12, 1959. Within four days the Chief suspended Bolieu and gave him the written statement required by Sec. 16. In the hearing before the Commission, the Chief testified that he looked into Bolieu's record covering the period prior to six months before the suspension in assessing the punishment, but not in determining the truth of the offenses. Bolieu argues that this is a violation of the Section. He does not urge that the Commission itself either looked or went behind the six-month period. The acts considered by the Commission were limited to the events of March 12. It is the Commission which is prohibited from considering matters more than six months before the suspension. The statute which prohibits the Commission from doing a thing is not violated by proof that someone else did the prohibited thing. This fact was forcefully emphasized during the course of the hearing when Mr. Raba, the Chairman of the Fire and Police Commission stated: "Gentlemen, whether he is a capable or incapable fireman, again I will say, isn't going to impress me at all, but the thing that is going to impress me is: Was the man intoxicated or not around noon on March 12, 1959?" The Commission complied with the Section.

The final point is whether there was substantial evidence to support the Commission findings that Bolieu was intoxicated. Bolieu admitted that he drank one-half of a half-pint bottle of whiskey before he came on duty at 10:00 in the morning. He drank the whiskey out of a bottle and drank it straight. He was ill when he did this. Lt. Dresch testified that he saw appellant at the station after noon, and that Bolieu looked like he had been drinking and was intoxicated. He was not competent to make a fire call, his talking was affected, his words were slurred, and he was in a stupor. District Fire Chief Dustin testified that Bolieu was not steady on his feet, and that he was a danger to himself and his co-workers.

■ In addition to the testimony concerning Bolieu's appearance and actions,

 

City made proof that a blood-alcohol test revealed that there was twenty-seven hundredths per cent by weight of alcohol in Bolieu's blood at about three o'clock in the afternoon. This is far in excess of what is enough to raise a presumption of intoxication under the standards of the American Medical Association. Jones v. State, 159 Tex.Cr.R. 29, 261 S.W.2d 161, 164. See, McKay v. State, 155 Tex.Cr.R. 416, 235 S.W.2d 173; People v. Kovacik, 205 Misc. 275, 128 N.Y.S.2d 492; 5 Florida Law Review, 11–17.

 Bolieu consented to take the test; moreover, there was no attack upon the competency of the test itself. There was no objection that City failed to prove the qualifications of the operator as a predicate to the testimony. In fact, when Lt. Morales of the Police Department was called to testify about the Drunkometer and the test, Bolieu's counsel admitted his qualifications. See Lopez v. State, 154 Tex.Cr.R. 227, 225 S.W.2d 852, 853. Lt. Depres, another policeman, also testified about the Drunkometer. Before he related the facts about the test given Bolieu, his qualifications were established without objection. Hence, the only questions raised about the test were those of weight and credibility, which the fact finder found against Bolieu. If we should wholly disregard all of the evidence about the test, there is still substantial evidence. Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664, 666.

The greater portion of appellant's brief is devoted to arguments directed at the weight of the evidence. He argues that Bolieu was sick, which probably is true. Sickness does not, however, necessarily exclude a state of intoxication. Either may aggravate the other condition. He argues also that no alarm was sounded during the time he was on duty. Neither the day nor the hour of the fire alarm is known, but a fireman must be ready when it comes. He must maintain a continuous state of readiness so he may promptly comprehend instructions, handle specialized equipment, climb ladders, withstand danger, take risks, and rescue persons endangered by fire. These are tasks which require a clear head and an able body, without which a fireman may endanger himself, his fellows and the public. When the fire alarm is sounded, it is then too late to sober up. Waiting for an alarm may be tedious and tiresome. Even this condition requires a self-discipline and an enforced discipline not required in many professions and vocations.

In our opinion, there was substantial evidence that Bolieu was intoxicated while on duty.