**CITY OF WICHITA FALLS, Appellant,**

v.

**Roger FOWLER, Appellee.**

**No. 17696.**

Court of Civil Appeals of Texas, Fort Worth.

Sept. 8, 1977.

H. P. Hodge, Jr., City Atty., Fillmore, Lambert, Farabee, Purtle & Lee, and Glynn R. Purtle, Wichita Falls, for appellant.

Thomas A. Neely, Wichita Falls, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from a judgment rendered by the trial court which set aside an order of the Wichita Falls Firemen's and Policemen's Civil Service Commission suspending a fireman from the fire department for a period of ninety days. The trial court held that (1) the fireman did not say the words or engage in the conduct which was the basis of his suspension; (2) that the order of the Civil Service Commission was not reasonably supported by substantial evidence; and (3) that Rule XIV, Section 45, Sub-paragraph (H), "conduct unbecoming to a gentleman and/or prejudicial to good order", as contained in the Civil Service Rules of the City of Wichita Falls is so vague, general and indefinite as to be violative of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 19 of the Texas Constitution.

We reverse and render.

Roger Fowler was a fireman with the Wichita Falls Fire Department. While at work on or about September 19, 1974, he was given a letter from Fire Chief Hurshel Johnson notifying him that he was being indefinitely suspended from the fire department. The suspension was the result of an incident that occurred at the fire station on September 16, 1974. Fowler timely requested a hearing before the Civil Service Commission. At that hearing, testimony was received from several witnesses. Later at the trial, all testimony presented at the hearing was accepted into evidence; no additional testimony was presented at the trial.

There were two versions of the September 16th incident presented to the Civil Service Commission for its consideration. In order to determine whether the order of the commission is supported by substantial evidence, we will relate both versions.

Durhl Caussey, a training specialist with the fire department, testified that about 5:15 p. m. on September 16, 1974, he left his office at the Central Fire Station and proceeded toward his pickup truck. Upon approaching his truck, he saw Fireman Jerry Harris squat down behind the tailgate of the truck. He saw Harris taking his hand from the tailgate. There was a vile, four-letter word inscribed in the accumulated dirt on the truck's tailgate. Then, Fowler

walked up and uttered vile and abusive language to Caussey in a hostile tone of voice.

The other version of the incident was given by Fowler, Harris, and two other firemen. Fowler's testimony is indicative of this second version. He testified that Harris, while going to his car, stopped behind Caussey's pickup and called him (Fowler) to look at a four-letter word that had been inscribed in the accumulated dirt on the tailgate. Caussey approached and Fowler said: "Yeah, and you don't know who did it, do you?" He denied making any vile and abusive statement to Caussey.

The record before this court indicates that there had been tremendous dissension between the civil service and noncivil service members of the fire department. For the details on this, see *City of Wichita Falls v. Harris*, 532 S.W.2d 653 (Tex.Civ.App.— Fort Worth 1975, writ ref'd n. r. e.).

The Civil Service Commission received the testimony, and it had the opportunity to observe the demeanor of the witnesses who testified. Thereupon, the commission suspended Fowler from the fire department for ninety days. Pursuant to art. 1269m § 18,[1] Fowler sought review in the district court, which set aside the order of the Civil Service Commission.

In its first assigned point of error, the appellant City of Wichita Falls contends that "[t]he trial court erred in failing to find that there was substantial evidence in support of the order of the Wichita Falls Fireman's (sic) and Policeman's (sic) Civil Service Commission."

We sustain this point of error.

In hearing this case, the trial judge was governed by the substantial evidence rule. In applying the substantial evidence rule, the trial court must consider all the evidence presented before it, but it does not pass upon the preponderance of the evidence. *Firemen's and Policemen's Civil Serv. Com'n. v. Shaw*, 306 S.W.2d 160, 163 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.). In determining whether the order of the commission is supported by substantial evidence,

[T]he court will not undertake to put itself in the position of the agency, and determine the wisdom or advisability of the particular ruling or order in question, but will sustain the action of the agency so long as its conclusions are reasonably supported by substantial evidence. This is so because, since the Legislature has seen fit to vest the authority to exercise sound judgment and discretion in the particular matter in the administrative agency, courts will not undertake to usurp the powers committed to the agency, and to exercise the agency's judgment and discretion for it. . . . In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. . . . The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. *If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside.* (Emphasis added.) *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1029–30 (1942).

Pursuant to the above standard, the trial court can set aside the order of the commission only if the evidence as a whole shows that reasonable minds could not have reached the conclusion that the commission must have reached. Applying this rule to the present case, this court holds that the evidence presented at the trial *does not show* that reasonable minds could not have reached the conclusion that the commission reached. Accordingly, we hold that the trial court erred in failing to find that there was substantial evidence in support of the order of the Civil Service Commission.

---

1. All statutory references are to *Tex.Rev.Civ.Stat.Ann.*

■ In its second point of error, the appellant City of Wichita Falls contends that "[t]he trial court erred in finding as a fact that the Plaintiff Roger Fowler did not say the words nor engage in the conduct stated as grounds for his indefinite suspension by the Fire Chief."

We sustain appellant's second point of error.

■ In an appeal from an order of a commission, the district judge is to determine whether the order is reasonably supported by substantial evidence, which is a question of law. *State v. County Board of School Trustees,* 334 S.W.2d 588, 590 (Tex. Civ.App.—Waco 1960, writ ref'd n. r. e.). The role of the trial judge in this instance is not that of a factfinder, and we hold that the trial judge erred in casting himself in that role.

■ The City's third point is that the trial court erred in holding that Civil Service Rule XIV, Section 45, Sub-Paragraph (H), which Fowler was found to have violated, is so vague, general and indefinite as to be violative of constitutional due process. The City argues that we have already resolved this issue in its favor in *City of Wichita Falls v. Harris, supra.*

Fowler's counterpoint asserts that the trial court was correct in holding that the rule was so vague as to be violative of constitutional due process. Yet his argument is also based on the premise that this court has already disposed of the constitutionality of the rule itself. Fowler's argument is that the *Harris* case reaffirmed the principle that civil service employees are entitled to due process and that the application of the rule in question, in light of the arbitrary and capricious action of Chief Johnson, was unconstitutional.

In the *Harris* case we sustained the City's contention that Section 5 of Art. 1269m was not "unconstitutionally vague and general and invalid under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution." *Harris* at 662. (Section 5 of Art. 1269m, in giving the Civil Service Commission the

power to make rules prescribing what constitutes cause for removal or suspension, lists as one of the permissible grounds conduct "prejudicial to good order.") In sustaining the City's point in *Harris,* however, we held that under the facts of that case "the grounds for suspension given by the Fire Chief" were not unconstitutionally vague under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. Id. at 663. We did not rule on the issue raised by the City in the instant case: whether the Civil Service Rule is so vague, general and indefinite as to be violative of constitutional due process.

In two recent opinions the United States Supreme Court has set forth the requirements of constitutional due process which must be met in order to defeat a challenge that a statute or administrative rule is "void for vagueness": *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (military court-martial) and *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (removal of nonprobationary federal employee).

The language of the Civil Service Rule here in question ("conduct unbecoming to a gentlemen [sic] and/or prejudicial to good order") is substantially similar to that of Articles 133 and 134 of the Uniform Code of Military Justice ("conduct unbecoming an officer and a gentleman" and "disorders and neglects to the prejudice of good order and discipline in the armed forces," 10 U.S.C. Sections 933, 934). The United States Supreme Court upheld that language in *Levy* against a challenge that it was void for vagueness under the Due Process Clause of the Fifth Amendment. That case involved an Army physician who was convicted by a general court-martial as a result of public statements in which he said that he would refuse to serve in Viet Nam if ordered to do so and that others should do likewise.

The Court of Appeals held that Articles 133 and 134 were void for vagueness "as measured by contemporary standards of vagueness applicable to statutes and ordi-

nances governing civilians." *Sub nom. Levy v. Parker*, 478 F.2d 772, 793 (3d Cir. 1973). The Supreme Court, reversing the Court of Appeals, quoted from *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974) concerning the "void-for-vagueness" challenge under the Due Process Clause of the Fifth Amendment:

> The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' Where a statute's literal scope, unaided by a narrowing statute court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.

The court noted that Articles 133 and 134 have been construed by the United States Court of Military Appeals and other military authorities in a manner which partially narrowed their "otherwise broad scope" (417 U.S. at 754, 94 S.Ct. 2547) and that Levy's conduct "fell within one of the examples of Art. 134 violations contained in the Manual for Courts-Martial" (417 U.S. at 741, 94 S.Ct. at 2554). After emphasizing the differences between military law and civilian law and between the customs of the communities, the court applied the same standard of review for a vagueness challenge as is applied to criminal statutes regulating economic affairs: that criminal responsibility should not attach "where one could not reasonably understand that his contemplated conduct is proscribed." 417 U.S. at 757, 94 S.Ct. at 2562.

In *Arnett* a nonprobationary federal employee who had made certain public statements about his supervisor was removed for "such cause as will promote the efficiency of the service." The court upheld the language of the statute involved "[b]ecause of the infinite variety of factual situations in which public statements by Government employees might reasonably justify dismissal for 'cause.' " 416 U.S. at 161, 94 S.Ct. at 1648. The court concluded that this standard was "essentially fair" and that requiring greater specificity was not practicable.

In another case involving the suspension of police officers, the court held similar language unconstitutionally vague. *Bence v. Breir*, 501 F.2d 1185 (7th Cir. 1974), cert. denied, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975). The court attempted to distinguish *Levy* and *Arnett* on the grounds that there are no overriding military considerations which would justify the relaxation of the test for vagueness as there were in *Levy,* and because the statute in *Arnett* prescribed "an admittedly general standard 'in order to give myriad different federal employees performing widely disparate tasks a common standard of job protection.' " 501 F.2d at 1190. The court in *Bence* distinguished these two cases because "[d]ue process demands that each challenged rule be examined in its context to determine whether in fact further specificity would be feasible or practicable" and because in *Bence* there were no "concretizing warnings (or limiting interpretation provided by an administrative manual)" to save a catch-all provision from a charge of vagueness. 501 F.2d at 1189, n. 2.

We find the rationales of *Levy* and *Arnett* compelling and decline to distinguish them on these grounds from the case at bar.

Firefighting is a profession "which demands a state of readiness, strict discipline, and a measure of obedience and valor not expected in ordinary callings." *Bolieu v. Firemen's and Policemen's Civil Service Com'n.,* 330 S.W.2d 234, 236 (Tex.Civ.App.— San Antonio 1959, writ ref'd n. r. e.). This requires "the establishment of a broad range of proscribed conduct, without detailing every possible offense." *Milani v. Miller,* 515 S.W.2d 412, 417 (Mo.1974). Moreover, we do not think it reasonable to conclude that Fowler did not understand that the use of abusive language in this instance was prohibited. It is well recognized that the use of abusive language may be prohibited under Civil Service Rules. *Bryant v. City of San Antonio,* 464 S.W.2d 888 (Tex. Civ.App.—San Antonio 1971, no writ) (use

of abusive language toward fellow officer); *Harless v. Bichsel,* 327 S.W.2d 791 (Tex.Civ. App.—San Antonio 1959, no writ) (physical and verbal abuse of prisoner as "conduct prejudicial to good order" of police department); *Reagan v. Bichsel,* 284 S.W.2d 935 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.) (racial slurs as "conduct prejudicial to good order").

Accordingly, we hold that under the facts of this case the rule is not unconstitutionally vague under the Due Process Clauses of the Fifth and Fourteenth Amendments and Art. 1, Section 19, of the Texas Constitution.

Nor do we think that the rule is unconstitutional as applied. The conduct in which the commission found Fowler engaged might well be punishable under Tex. Penal Code Ann. § 42.01(a)(1) which prohibits as "disorderly conduct" the use of "abusive, indecent, profane, or vulgar language in a public place [where] the language by its very utterance tends to incite an immediate 'breach of the peace.' "

All the City's points having been sustained, we reverse the judgment of the trial court and render judgment that the order of the Wichita Falls Firemen's and Policemen's Civil Service Commission be sustained.