**E. L. LOCKHART, Appellant,**

v.

**The FIREMEN'S AND POLICEMEN'S CIVIL SERVICE COMMISSION OF the CITY OF FORT WORTH et al., Appellees.**

No. 18457.

Court of Civil Appeals of Texas, Fort Worth.

May 7, 1981.

Rehearing Denied May 28, 1981.

Farrar & Claunch, and Jim Claunch, Fort Worth, for appellant.

Paul C. Isham, City Atty., and Randall K. Price, Asst. City Atty., Fort Worth, for appellees.

## OPINION

SPURLOCK, Justice.

E. L. Lockhart was indefinitely suspended from the police department of the City of Fort Worth, allegedly for actions which amounted to a dereliction of duty. Lockhart appealed the suspension to the Fireman's and Policeman's Civil Service Commission of the City of Fort Worth (Commission). The Commission determined that the allegations against Lockhart were true and that sufficient evidence did in fact exist for the suspension. Lockhart appealed the Commission's finding to the District Court. That court affirmed the Commission's finding. Lockhart here appeals the decision of the trial court, alleging that the Commission failed to comply with Tex.Rev.Civ.Stat. Ann. art. 1269m § 16 in its refusal to reinstate him, that the commission's action in upholding the suspension resulted in a denial of due process, and that the trial court erred in finding that the Commission's order of suspension was supported by substantial evidence.

We overrule the last two points of error and sustain the first, finding that the Commission failed to comply with Tex.Rev.Civ. Stat.Ann. art. 1269m § 16 (1963).

Judgment reversed and rendered.

The attorneys for the parties stipulated and agreed that the Chief of Police alleged that Officer E. L. Lockhart did the following acts:

"On Sunday, October 14, 1979, Officer Lockhart, working evening shift, radio patrol, went back in service from an assist call on 4125 Freshfield at 2332 hours. Officer Lockhart did not return to his beat, but went in the opposite direction to an apartment complex located at 4600 Miller. He entered Apartment 331A which was occupied by a female acquaintance. While inside Apartment 331A, Officer Lockhart asked the police dispatcher by using his handie-talkie radio, if it would be clear to

go to the garage. The dispatcher put him on a Signal 49 (garage sheet) at 2346 hours. Officer Lockhart did not leave the apartment at that time. At 2352 hours, the Channel 6 dispatcher was required to dispatch two police units to this same apartment complex at 4600 Miller Street to investigate a Signal 37 (shooting).

"In a taped interview with Sgt. D. C. Burbank, Internal Affairs investigator, on Tuesday, October 30, 1979, Officer Lockhart stated that he heard the shooting call on his radio, but did not respond. At 2358 hours, one of the units assigned to the shooting arrived and was advised by the second unit that he was still a ways off. Officer Lockhart did not go to the scene of the shooting, did not advise the dispatcher that he was still in Apartment 331A, and did not call the unit who was on the scene and offer to help. At 2358 hours, Officer Lockhart, who was still in Apartment 331A, cleared his signal 49 and asked if it would be clear for a 'short one' (referring to a Signal 43, coffee break). Officer Lockhart, who was still in Apartment 331A, waited seven minutes before he advised the dispatcher of the telephone number where he could be reached on his coffee break. In the interview with Sgt. Burbank, Officer Lockhart when asked why he waited, stated, 'Well, I guess because I was supposed to be on a 49, I was giving myself a little time to get back.'"

These allegations were contained verbatim in a letter from H. F. Hopkins, the Fort Worth Police Chief, to the Commission. The concluding paragraph stated: "For these violations and in consideration of his record for the past six months, I therefore indefinitely suspended Officer E. L. Lockhart, I.D. 1573, such suspension effective December 5, 1979 at 1530 hours."

Lockhart complains that the Commission was in error in affirming the suspension because the above letter of suspension erroneously failed to set out the act or acts complained of on the part of the employee as required by Tex.Rev.Civ.Stat.Ann. art. 1269m, § 16 (1963).

That section provides in part:

"Sec. 16. The Chief or Head of the Fire Department or Police Department of the city government shall have the power to suspend indefinitely any officer or employee under his supervision or jurisdiction for the violation of civil service rules, but in every such case the officer making such order of suspension shall, within one hundred and twenty (120) hours thereafter, file a written statement with the Commission, giving the reasons for such suspension, and immediately furnish a copy thereof to the officer or employee affected by such act, said copy to be delivered in person to such suspended officer or employee by said department head. . . .

"The written statement above provided to be filed by the department head with the Commission, shall not only point out the civil service rule alleged to have been violated by the suspended employee, but shall contain the alleged acts of the employee which the department head contends are in violation of the civil service rules. *It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him.* In any civil service hearing hereunder, the department head is hereby restricted to his original written statement and charges, which shall not be amended, . . . ." (Emphasis added.)

It is Lockhart's contention that the last paragraph in the police chief's letter to the Commission is lacking in the specificity required by Tex.Rev.Civ.Stat.Ann. art. 1269m in that it generally and vaguely refers to acts of Officer Lockhart committed in the last six months as opposed to specifically describing the acts. We agree.

■ Where the language of a statute is ambiguous, its construction becomes a necessary obligation of the courts. *State v. Shoppers World, Inc.*, 380 S.W.2d 107 (Tex. 1964). However, where a statute is expressed in plain and unambiguous language there is neither the room nor the need for

judicial construction. *American Canal Company of Texas v. Dow Chemical Company*, 380 S.W.2d 662 (Tex.Civ.App.—Houston 1964, writ dism'd). In such a case the law will be applied and enforced as it reads regardless of its policy or its purpose. 53 Tex.Jur.2d *Statutes* § 123 (1964). Nor, under these circumstances, are the courts to be concerned with the policy of the enactment or the justice of its effect. *Weaver v. Robison*, 114 Tex. 272, 268 S.W. 133 (1924 opinion adopted).

Art. 1269m, § 16 clearly states that the written statement issued by the department head to the Commission shall "contain the alleged acts of the employee which the department head contends are in violation of the civil service rules." The statute further provides that where the department head (here, Chief of Police, H. L. Hopkins) fails to "*specifically* point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him." (Emphasis added.)

█ Chief Hopkins did allege with great specificity the acts of Lockhart that occurred on the evening of October 14th of 1979. However, the closing paragraph of his letter to the Commission states: "For these violations *and in consideration of his record for the past six months*, I therefore indefinitely suspended Officer E. L. Lockhart, . . . ." (Emphasis added.) Whether or not the acts specified are sufficient in themselves to support the suspension is not a question art. 1269m § 16 leaves for the courts to decide. In the absence of the required specificity the obligation of the Commission is clear. The statute, in such circumstances, expressly and unequivocally directs the Commission to "promptly reinstate" the officer.

The Commission argues that this case is similar to that of *Bolieu v. Fireman's and Policeman's Civil Service Commission of City of San Antonio*, 330 S.W.2d 234 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.). In the process of suspending *Bolieu* the Fire Chief admittedly reviewed *Bolieu's* employment record beyond the six month period permitted by art. 1269m, § 16. Bolieu complained that this constituted a violation of the Act. The San Antonio court disagreed, noting that the Fire Chief testified that his inquiry into Bolieu's record beyond the six month period preceding Bolieu's suspension was for the limited purpose of determining the proper punishment and not used in anyway to ascertain the truth of the specified allegations.

We find *Bolieu* irrelevant here. Lockhart argues that the Police Chief's letter fails to give him the requisite notice of the charges to be brought against him, that under art. 1269m, § 16, the occurrence of this failure mandates that the Commission reinstate him. The issue here is not solely whether or not the department head violated the statute but whether or not the Commission responded as directed by art. 1269m, § 16 to that error. We find that it did not. An excerpt from Chief Hopkins testimony at the Commission hearing reads as follows:

"Q. Chief Hopkins, my name is J. R. Molina. I think we met last time at the hearing. I have a copy of your letter to the Commission that's dated December 5, 1979, relative to Officer Lockhart's suspension, indefinite suspension. And I know you don't have a copy with you, but have you recently looked at your letter in this file?

"A. Yes.

"Q. Directing your attention to the last paragraph of this letter, it says, 'For these violations and in consideration of his record for the past six months, I therefore indefinitely suspended Officer E. L. Lockhart . . . .' And do you recall that portion being in your letter?

"A. Yes.

"Q. And it (the suspension) was for those very reasons, the violations which you have testified to, that you reviewed the evidence on?

"A. Right.

"Q. And also in consideration of his record the past six months. Is that right?

"A. Correct."

We find nothing in Chief Hopkins' testimony to indicate that Lockhart's past record was reviewed for the limited purpose of assessing his punishment. The inference we draw here is that the suspension was the result of the cumulative effect of Lockhart's acts on the night of October 14 as well as his unspecified acts of the preceding six months. Accordingly, we find that Lockhart was not given the proper notification as required by art. 1269m, § 16 and that the Commission erred in failing to promptly reinstate Officer Lockhart.

We reverse the order of the trial court upholding the Commission's action and render judgment that Officer Lockhart be reinstated as required by art. 1269m, § 16.