**W. D. SUDDARTH, Plaintiff,**

v.

**D. M. SLANE, Superintendent of Virginia State Police, Defendant.**

**Civ. A. No. 80–0210–A.**

United States District Court,
W. D. Virginia.

May 25, 1982.

John H. Tate, Jr., Marion, Va., for plaintiff.

Marshall Coleman, Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

### I. INTRODUCTION

The plaintiff, W. D. Suddarth, has initiated this action pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages, backpay, reinstatement and injunctive relief. Jurisdiction attaches pursuant to 28 U.S.C. § 1343. The plaintiff alleges that he was deprived of his constitutional rights to due process, freedom of association and equal protection of the law when his employment with the Virginia State Police (hereinafter called Department) was terminated for disreputable conduct. The plaintiff is a citizen of Smyth County, Virginia; the defendant is the Superintendent of the Department of State Police of the Commonwealth of Virginia. The case is presently before the Court upon the defendant's motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The parties have submitted lengthy briefs and/or affidavits and exhibits on the issues, as well as copies of the regulations governing Department personnel. At the Court's request, a transcript of the administrative hearing which resulted in the plaintiff's termination has been submitted. Having held an evidentiary hearing on the defendant's motion, this case is ripe for disposition.

For the reasons stated below, the defendant's motion for summary judgment is granted. An appropriate order shall issue.

### II. FACTS

It is undisputed that prior to May, 1978, the plaintiff had been employed for eleven years by the Commonwealth of Virginia Department of State Police, and was serving satisfactorily as a trooper in Smyth County, Virginia when his employment was terminated. An anonymous complaint was made to the Department on May 16, 1978, accusing the plaintiff, a married man with two daughters, of having an affair with a neighbor, a married woman with two children. When the plaintiff was questioned by his employer, he admitted to the illicit relationship. During the course of the affair, the neighbor gave birth to a third child, who she claims was fathered by the plaintiff. The defendant states that these circumstances were widely known in the small town where the plaintiff lived; the plaintiff states that the circumstances were not known prior to the 16th of May.

The plaintiff was suspended from work on May 26, 1978, pending a full investigation of the case. On June 30, 1978, he was charged with violations of General Order 17, Paragraph 3: engaging in "criminal, infamous, dishonest, immoral or notoriously disgraceful conduct, or other conduct prejudicial to the Department", and Paragraph 4: violating "the laws of the United States, the Commonwealth of Virginia, the ordi-

nances of any city, county, or municipality of the Commonwealth of Virginia, or the rules and regulations of the Department." At the completion of the investigation, the officer in charge advised the plaintiff orally on July 7, 1978, and in writing on July 10, 1978, that he was dismissed from the Department effective May 26, 1978 for violation of General Order 17, Paragraphs 3 and 4, by conduct that "certainly tends to bring the reputation of the Department into disrepute ..." under General Order 19(2)(g).[1] Record, Transcript of meeting of July 7, 1978.

Trooper Suddarth elected to appeal the dismissal through the State's grievance procedure pursuant to Virginia Code § 2.1–114.5:1 (Cum.Supp.1981).[2] A hearing panel, composed of Lt. L. A. Graham, who was selected by the defendant; Trooper G. N. Smith, who was selected by the plaintiff; and Lt. H. L. Duncan, who was selected by the other two panel members, was convened on August 31, 1978 to determine whether the plaintiff was properly dismissed. After an evidentiary hearing, the panel concluded that the plaintiff had violated General Order 17, Paragraphs 3 and 4 of the State Police Manual, and that his employment had been properly terminated by the Department.

Subsequently, the plaintiff attempted to have the Department of Labor investigate the allegedly discriminatory application of the rules and regulations of the Department of State Police, but the Department of Labor declined. The plaintiff then instituted this action.

## III. EQUAL PROTECTION

First, the plaintiff alleges that he has been denied equal protection of the law. He asserts that an "unwritten policy" of the Department promotes disparate treatment in disciplinary matters between supervisory personnel and troopers charged with violations of the same rule. Through affidavits and interrogatories, the plaintiff has attempted to show, in particular, that two officers in the Department are divorced from former wives as a result of adulterous relationships with fellow female employees. He avers that these officers are married to their alleged former paramours. Through these two alleged instances, as well as others that would supposedly surface if the Court were to inspect the Department's records, the plaintiff argues that he was denied equal protection of the Department regulations when the Department imposed a more severe sanction upon him than it imposed upon colleagues who were guilty of the same conduct.

■ Notwithstanding the potential truth of the plaintiff's allegations of disparate treatment, Suddarth cannot recover pursuant to Section 1983 on equal protection grounds. Lest a result contrary to public policy arise, "[n]o court will lend its aid to a party who founds his claims for redress upon an illegal act." *The Florida*, 101 U.S. 37, 43, 25 L.Ed. 898 (1880). Under Virginia law, "participation in an immoral or unlawful act precludes recovery for injuries sustained as a result of that act...." *Miller v. Bennett*, 190 Va. 162, 165, 56 S.E.2d 217, 219 (1949). Here, as in the Fourth Circuit's recent decision of *Dudley v. Stoneman*, 653

---

1. According to the defendants' sworn Answer to Plaintiff's Interrogatory Number 22, the relationship between General Order 17, Paragraphs 3 and 4, and General Order 19(2)(g) is as follows. In order for a member of the Department to be discharged from employment, the charge must be sustained by information indicating that the member committed specific charges, in this case General Order 17, Paragraphs 3 and 4. Additionally, the evidence must indicate that the facts of a specific case are of a sufficient gravity or seriousness to justify the specific sanction of removal under General Order 19(2)(g). Under this provision,

the termination of the services of a member is deemed a removal for failure to render satisfactory services when actions constitute "[c]onduct unbecoming a member or employee of the Commonwealth such as to bring the service into disrepute." Record, Supplementary Responses to Plaintiff's Interrogatories at 2.

2. The plaintiff could have appealed alternatively through the "Policeman's Bill of Rights", Virginia Code § 2.1–116.1 to 2.1–116.9 (1979 Repl.), which would have entitled him to a hearing board consisting of lower echelon personnel.

F.2d 125 (4th Cir. 1981), the plaintiff complains that he has been subject to a more severe sanction by the Department than imposed upon other Department personnel who have also engaged in similar or identical conduct. However, since he admits that the conduct he engaged in from which his alleged injuries now arise was in violation of Virginia law and Department regulations,[3] he may not recover under Section 1983. *Id.* at 126.

## IV. OVERBREADTH

The plaintiff challenges General Order 17, Paragraphs 3 and 4[4] as overbroad as applied to him, as well as overbroad on their face. This assertion of overbreadth necessarily means either that the application of the regulations deprives him of a constitutionally protected right, or, in the alternative, that the language of the regulations punish speech or conduct protected by the First and Fourteenth Amendments. In either event, it is clear from the pleadings and counsels' arguments that the plaintiff bases his assertion of overbreadth upon an alleged denial of his right to freedom of association and his right to privacy.

### (a) Overbreadth as Applied

If the conduct of Suddarth in this instance is protected by the First and Fourteenth Amendments, then the court must strictly scrutinize the importance of the Governmental interests underlying the regulations, and/or whether the means consistent with the furtherance of that interest have been narrowly employed by the Department. *See Wilson v. Swing*, 463 F.Supp. 555, 563 (M.D.N.C.1978). However, the conduct in question is not protected by the First or Fourteenth Amendments. After an examination of the United States Supreme Court's opinions in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the Court is of the opinion that adultery is not protected by the First Amendment. *Accord, Sullivan v. Meade Ind. School Dist.*, 530 F.2d 799 (8th Cir. 1976); *Johnson v. San Jacinto Jr. College*, 498 F.Supp. 555 (S.D. Tex.1980); *Wilson v. Swing*, 463 F.Supp. at 563; *Hollenbaugh v. Carnegie Free Library*, 436 F.Supp. 1328 (W.D.Pa.1977), *aff'd*, 578 F.2d 1374 (3rd Cir.) (unpublished), *cert. de-*

---

**3.** Pursuant to it's investigation, the Department has consistently maintained that the plaintiff engaged in adultery, defined by Virginia Code § 18.2-365, as follows:

> § 18.2–365. *Adultery defined; penalty.* —Any person, being married, who voluntarily shall have sexual intercourse with any person not his or her spouse shall be guilty of adultery, punishable as a Class 4 misdemeanor.

During an interview with First Sergeant E. F. Loomis on May 16, 1978, the plaintiff admitted to having an adulterous affair with his neighbor's wife for the past two years. By letter of May 18, 1978 to Captain C. E. Nicholls, the plaintiff admitted that "the alleged affair . . . is true." At the investigatory hearing of July 7, 1978 conducted by Captain R. M. Terry, Suddarth admitted that the evidence supporting the Department's charge that he had violated the adultery statute, Va.Code § 18.2–365, was true. Finally, at the hearing of August 31, 1978 before his grievance appeal panel, the following dialogue ensued:

> Q. When you first became involved, sexually involved, with [your neighbor], were you aware that this was a violation of the law; a violation of Virginia law?
> A. (Suddarth) Oh, yes, sir.

> Q. All right. Were you aware that it was a violation of the Department rules and regulations?
> A. Yes, sir.
> Q. Were you aware of it all through this affair, through this illicit affair?
> A. Yes sir.
> Q. Do you consider this to be immoral conduct?
> A. As spelled out by the statute, perhaps it is. At the time—I think at the time I felt no, because I was in love with her.
> Q. You don't feel it was immoral because you were in love with her?
> A. I did not feel it was immoral, nor wrong, because I was in love with her.

Record, Transcript of Hearing at 63.

**4.** General Order 17, Paragraph 3 provides:

> Members and employees shall not engage in criminal, infamous, dishonest, immoral or notoriously disgraceful conduct, or other conduct prejudicial to the Department.

Paragraph 4 provides:

> No member or employee shall violate the laws of the United States, the Commonwealth of Virginia, the ordinances of any city, county, or municipality of the Commonwealth, or the rules and regulations of the Department.

*nied*, 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978). This is particularly true where the Commonwealth of Virginia has a law in Virginia Code § 18.2–365 which prohibits adultery. *See e.g., Hollenbaugh v. Carnegie Free Library*, 439 U.S. 1052, 1054, 99 S.Ct. 734, 735, 58 L.Ed.2d 713 (1978) (Marshall, J., dissenting from denial of certiorari).

■ Since the conduct in question is not protected by the First or Fourteenth Amendments, plaintiff's overbreadth challenge therefore is "one of substantive due process: whether the rule is so irrational that it may be branded 'arbitrary', and therefore a deprivation of [the plaintiff's] 'liberty' interest in choosing his own lifestyle." *Wilson v. Swing*, 463 F.Supp. at 563, quoting *Kelley v. Johnson*, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976). Inasmuch as General Order 19(2)(g) expresses the Department's interest in deterring conduct of employees which is "such as to bring the service into disrepute," *see* note 1 *supra*, and in view of the fact that Suddarth's conduct in violation of either General Order 17, Paragraph 3 or Paragraph 4 is quite likely to bring the Department into disrepute, the Court concludes as a matter of law that Paragraph 3 and Paragraph 4 are not arbitrary, irrational or a deprivation of any liberty interest enjoyed by Suddarth. *Accord, Wilson v. Swing*, 463 F.Supp. at 563.

### (B) Facial Overbreadth

Insofar as the plaintiff alleges that the Department's regulations are facially overbroad, the defendant argues that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others." *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Thus, in the usual case, a plaintiff who fails to establish that regulations have been unconstitutionally applied to him does not have standing to assert the facial overbreadth of the same regulations.

■ However, there are, as with other doctrines "[e]mbedded in the traditional rules governing constitutional adjudication . . . ," *id.*, limited exceptions to this principle. This is true in the area of the First Amendment. Litigants in the First Amendment overbreadth context have standing because of the very real concern that "the possible harm . . . in permitting unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overbroad statutes." *Id.* at 612, 93 S.Ct. at 2916. Therefore, notwithstanding the fact that Suddarth's own rights of privacy and association are not violated, he may challenge the regulations because of a judicial prediction "that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

■ There are, however, limits to the application of invalidation of regulations for facial overbreadth. The function of facial overbreadth adjudication

> attenuates as the otherwise unprotected behavior it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate State interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.

*Id.* at 615, 93 S.Ct. at 2917. Thus, "where conduct and not merely speech is involved," the overbreadth of the regulation must not only be real but also substantial, viewed in light of the regulations' plainly legitimate sweep. *Id.* Since the rules under which the plaintiff was charged are aimed at a range of conduct and speech, the regulations must be substantially overbroad before they may be invalidated merely for facial overbreadth.

Although the Supreme Court has not addressed precisely the factors relevant to a determination of whether a statute is substantially overbroad, the Third Circuit, in

reliance on *Broadrick* and the decisions of other courts, has articulated four factors relevant to the substantial overbreadth question. *Aiello v. City of Wilmington*, 623 F.2d 845, 854–55 (3rd Cir. 1980). First, the Court must balance the number of permissible applications of the regulations. Second, the historic or likely frequency of the regulations' conceivably impermissible applications is also relevant. Third, "the substantiality of a regulation's overbreadth may be determined by the nature of the activity or conduct sought to be regulated." *Id.* at 854. Finally, the Court must inspect the nature of the state interest underlying the regulations. *Id.*

 Applying these guidelines, the Court does not find that the challenged regulations are facially overbroad. The Court has already intimated the nature of the Department's interest underlying these regulations, i.e., to prevent conduct which is likely to bring it into disrepute. This interest is not only substantial, but rational, since it is intended to sustain the public trust in the integrity of the very persons who are sworn to uphold the laws of the Commonwealth of Virginia. Furthermore, the substantiality as well as frequency of the regulations' overbreadth are not so great as to be specifically directed at pure speech. Paragraph 3 is specifically directed at "criminal, infamous, dishonest, immoral, or notoriously disgraceful *conduct*," while Paragraph 4 prohibits violations of the laws of the land and/or the rules and regulations of the Department. These regulations demonstrate the substantial, legitimate concerns of the Department for prohibiting conduct which may deteriorate the efficiency, discipline and morale within the Department of State Police. While these regulations may have some arguably overbroad applications, they are still yet directed at a spectrum of activities in which the Department has a legitimate interest in regulating. *Aiello,*

623 F.2d at 855–56 & n.20. However, it is the Court's opinion that the frequency is relatively low, and "that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick*, 413 U.S. at 615–16, 93 S.Ct. at 2917–18.

Accordingly, whether Suddarth's attack on General Order 17, Paragraphs 3 and 4 is based on overbreadth as applied, substantive due process, or facial overbreadth, the Court concludes as a matter of law that the defendant is entitled to judgment, and that summary judgment should be granted.

## V. VAGUENESS

 The plaintiff also challenges General Order 17, Paragraphs 3 and 4 as void for vagueness and as applied to his conduct. The vagueness doctrine challenges the language of a regulation on the grounds that a person of ordinary intelligence would have to guess whether his conduct is proscribed by the regulation. *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). However, if the regulations in this instance clearly apply to Suddarth's conduct, he cannot challenge them for facial vagueness.[5] *Parker v. Levy*, 417 U.S. 733, 755–56, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *Aiello v. City of Wilmington*, 623 F.2d at 850; *Kannisto v. City and County of San Francisco*, 541 F.2d 841, 845 (9th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977). Therefore, the Court must initially address the issue of whether the Department's regulations are vague as applied to the plaintiff.

 The underlying principle of the due process requirement of certainty and definiteness is that no one shall be held responsible for behavior which he could not reasonably understand to be proscribed.

---

5. Unlike the standing exceptions to the overbreadth requirement, a challenge of rules on void for vagueness grounds, by one who falls squarely within their prohibitions, is not permitted merely because the rules may impermissibly infringe upon the exercise of First Amendment rights by another in a hypothetical situation. *CSC v. Letter Carriers*, 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973); *Parker v. Levy*, 417 U.S. at 756, 94 S.Ct. at 2561.

**620**

*United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). In other words, if Suddarth was fully aware that the improper conduct for which he was charged, *and which he admitted to be true*, was such as to violate the Department's regulations, the regulations cannot be vague as applied. *Allen v. City of Greensboro*, 322 F.Supp. 873, 877–78 (M.D.N.C.), *aff'd*, 452 F.2d 489 (4th Cir. 1971). *See also Bence v. Breier*, 501 F.2d 1185, 1193–94 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975). This particularly is true when conduct is properly the subject of discipline even in the absence of a rule. *Allen v. City of Greensboro*, 452 F.2d at 491. *See also Smith v. Price*, 616 F.2d 1371, 1379 n. 10 (5th Cir. 1980). It is apparent from the Court's previous discussion that the plaintiff was fully aware that the conduct for which he was charged was such as to be "criminal, infamous, . . . immoral or notoriously disgraceful . . .," as well as in violation of the laws of the Commonwealth of Virginia and the regulations of the Department. *See* note 3 *supra*. While the language of the regulations, particularly in Paragraph 3, may create some ambiguity,

> there are limitations in the English language with respect to being both specific and manageably brief, and it seems . . . that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

*CSC v. Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). This conclusion is further borne out by the decisions of other courts which have approved the use of rules and regulations using language nearly identical to that used in Paragraphs 3 and 4. *See Arnett v. Kennedy*, 416 U.S. 134, 161–62, 94 S.Ct. 1633, 1647–48, 40 L.Ed.2d 15 (1974); *Meehan v. Macy*, 392 F.2d 822, 835 (D.C.Cir.1968), *modified*, 425 F.2d 469 (D.C.Cir.), *vacated on other grounds*, 425 F.2d 472 (D.C.Cir.1969). Therefore, the Court finds that the Department's regulations are not unconstitutional as applied to Suddarth. Accordingly, since the regulations clearly apply to Suddarth's conduct, he cannot challenge them for facial vagueness. *Parker v. Levy*, 417 U.S. at 756, 94 S.Ct. at 2561.

## VI. PROCEDURAL DUE PROCESS

Finally, the plaintiff complains that he has suffered a denial of procedural due process in the hearing process. By affidavit, the plaintiff states that his Sergeant, not his First Sergeant, should have investigated the complaint against him per the agency guidelines incorporating Virginia Code § 2.1–114.5:1(D)(1). He further asserts that the appeals hearing panel was biased against him since counsel for the Department at the hearing was the immediate supervisor of the third panel member.

■ Virginia Code § 2.1–114.5:1(D)(4), p. 3 provides the following:

> Failure by the grievant to comply with all substantial procedural requirements of the grievance procedure without just cause will terminate the right to further appeal. Failure of the respondent to comply with all *substantial procedural requirements* of the grievance procedure without just cause will, at the option of the grievant, advance the grievant to the next step in the grievance resolution process. Failure of the respondent, without just cause, to comply with all substantial procedural requirements of the final step of the grievance procedure shall result in a decision in favor of the grievant.

(emphasis supplied). Although subsection (D)(1) provides for an investigation by the grievant's immediate supervisor (his Sergeant) this is the first of a four step grievance process, and the plaintiff chose to advance to the three remaining steps of the procedure. Additionally, the Court does not feel that this discrepancy qualifies as a violation of a "substantial" procedural requirement.

■ Finally, the Court finds that Suddarth's second complaint has no merit. Under the grievance procedure statute, the

third panel member is selected by the first two, and none of the panel members are to have a direct involvement with the grievance being heard by the panel. Va.Code § 2.1–114.5:1(D)(4). Furthermore, either party at the hearing may be represented by legal counsel or such other representative as it desires. *Id.* There are no provisions for the prohibition of relationships between the panel members and the parties' representatives. Since the provisions of the grievance statute were complied with in both of the above instances, the Court finds that Suddarth was not denied due process under the Fourteenth Amendment. *See Kersey v. Shipley*, 673 F.2d 730 (4th Cir. 1982).

## VII. CONCLUSION

Accordingly, the Court shall grant summary judgment to the defendant on all. issues herein, and this cause shall be stricken from the docket of this Court. An appropriate order shall herewith issue.